CAROLINE L. G. SCOTT, Respondent, *v.* THE HAVERSTRAW CLAY AND BRICK COMPANY, Appellant.

By the terms of a lease of premises used as a brickyard, the lessee, aside from the payment of rent as stipulated, covenanted to make certain additions and improvements, so as to constitute, when completed, "a proper and substantial brickyard upon the whole of the demised premises," to keep up and maintain the same, and to leave all these improvements, as well as those found upon the premises when said lessee took possession, in good condition, and to preserve the property from deterioration. The lessee sublet the premises to parties who were in possession under a former lease, and owned certain machinery and fixtures then on the premises; these, and also some fixtures and machinery thereafter put upon the premises were removed at the end of the term.    In an action to recover damages for breach of the covenants, *held*, that they bound the

lessee to furnish all things necessary to a brickyard, such as was described, and to leave them upon the premises, and also to provide against deterioration by natural wear and damage of the elements; that defendant was liable in damages for the articles removed, and also for failure to furnish and put upon the premises those required to fulfill the requirements of the lease.

Among other things defendant covenanted to put upon the premises a steam engine of sufficient horse-power and capacity for the purposes of the brickyard. Defendant furnished an engine of less capacity than that called for, which it left upon the premises. It did not appear that plaintiff ever used it or had the benefit of its use. *Held,* that the referee properly considered the case as if no engine had been furnished, and allowed the value of an engine such as was called for.

Defendant also covenanted to leave the surface of the yard in a smooth condition; this it failed to do. *Held,* that defendant was liable for breach of this covenant, and the fact that subsequent to the making of the lease other methods of making brick had been devised which rendered a smooth surface unnecessary, did not change the construction to be put upon the covenant or defendant's liability under it.

(Argued May 27, 1892; decided October 4, 1892.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 14, 1891, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

This action was brought to recover damages for the breach of certain covenants in a lease.

The material facts are stated in the opinion.

*Calvin Frost* for appellant. In the first lease the lessee agreed " to keep and maintain at its own cost and expense a proper and substantial brickyard upon the whole of the demised premises." This means one yard covering the whole premises. It also means that every appliance necessary to a fully-equipped brickyard must be put on and left. A covenant to keep in repair requires the covenantor to put in repair, *ergo,* a covenant to keep and maintain a brickyard, requires the making of one. (Wood on Landl. & Ten. 598.) For a breach of the express covenants of the lease the measure of damages is the cost of putting the property in the condition

in which the defendant agreed to leave it. (*Green* v. *Eden*, 2 T. & C. 582; *Lockrow* v. *Horgan*, 58 N. Y. 625.) The kilnsheds, pitsheds, machines, etc., on the Oldfield yard, were put there under a lease which expired April 1, 1877. They were not recovered during such lease. They thereupon became the property of the owner of the land (Mrs. Scott), and were her property on the 31st day of January, 1878, when the first lease between these parties was made. The underletting to Oldfield was a violation of the lease from plaintiff to defendant. (*Loughran* v. *Ross*, 45 N. Y. 792.)

*Alonzo Wheeler* for respondent. Damages by reason of removal of engine, fixtures, burning and pit sheds, brick machines, etc., of Oldfield yard, were not allowable. (*Kerr* v. *Kingsbury*, 39 Mich. 100; *Penton* v. *Roberts*, 2 East. 88; *Marshall* v. *Lloyd*, 2 M. & W. 457; *Weston* v. *Woodcock*, 7 id. 14; *Ombony* v. *Jones*, 19 N. Y. 339.) Brockaway and Smith erected several houses and pitsheds after the execution of the lease, which they removed at the end of their term — April 1, 1888. This they had a right to do. (*Ombony* v. *Jones*, 19 N. Y. 234; *Van Nest* v. *Polard*, 2 Pet. 137; *Naylor* v. *Collings*, 1 Taunt. 19.) It was error to reject the evidence offered to prove the usage or custom of tenants to remove brick machines erected by them on leased premises. (1 Greenl. on Ev., § 294; *Van Ness* v. *Placard*, 2 Pet. 137; *Well* v. *Vaile* 49 N. Y. 464; *Johnson* v. *De Peyster*, 50 id. 666.)

O'Brien, J. The plaintiff recovered damages for the breach, on the part of the defendant, of certain covenants in a lease of premises used as a brickyard. The lease covered a period of ten years from April 1, 1878, and contained the following covenants on the part of the defendant, out of which the claim for damages arises:

" That it will, at its own proper cost and expense, maintain and keep up a proper and substantial brickyard upon the whole of the demised premises. That it will keep and pre-

serve all the buildings, sheds, docks, pits, and other improvements, now on said premises belonging to the party of the first part, or which may hereafter be erected, enlarged or altered, in good repair and condition at its own cost and expense; and at the expiration of said term, or sooner determination of this lease, leave the same, with all docks, buildings, pits, improvements, and fixtures, in good order and condition, the whole thereof to be, at the termination of this lease from whatever cause, and become the sole and absolute property of the party of the first part, and at such time to be surrendered and yielded up to the parties of the first part or their legal representatives in good order and condition.

" That it will not suffer, permit or allow any bats from said yard or vessel, or any other material to be thrown into the Hudson river near the bulkheads or docks, so as in any way to obstruct or interfere with the navigation, or free use thereof, or so as to make the waters of the river in any degree more shallow or less deep."

" That it will, on the termination of the lease, leave the docks, yards and grounds in good, smooth and regular surface and condition and in good repair. It being part of the consideration of this lease, that the party of the second part shall keep the property from deterioration, and leave on the same all additions and improvements as aforesaid.

" That it will erect, put up and maintain on said premises, a steam engine, for the manufacture of brick thereon, of sufficient horse power and capacity for the purposes thereof, with suitable buildings and fixtures and all machinery required therefor; and that, at the expiration of the term, it will leave the same and every part thereof on said premises in good order and condition, the whole then to be and become the absolute property of the party of the first part; said engine, fixtures, building and machinery being a part consideration for the granting of the term hereby demised."

The defendant went into the possession of the premises at the date of the commencement of the term fixed by the lease and occupied them, thereunder, until the termination of such

term.   It is alleged and found that there were two leases, the first dated February 23, 1878, made when the plaintiff was a joint owner of the premises with another, for five years, to commence on the first of April thereafter.   Subsequently and on January 31, 1879, the plaintiff having become the sole owner, executed to the defendant another lease for five years, the term to commence at the expiration of the term demised in the first, and adopting therein all the covenants of the first lease, with the last paragraph above quoted in addition.  These two instruments demised to the defendant two successive terms of five years, and are to be read and construed as one grant. The rent reserved was $1,200 per year, payable quarterly. The cause was tried before a referee who, upon conflicting evidence, found the following facts with respect to the violation of the covenants above set forth, on the part of the defendant.

"That when the lease went into effect, and the defendant into possession, there were upon the premises, buildings, sheds, docks on the banks of the Hudson river, pits, machines, boilers, engines and appurtenances, fixtures and other improvements belonging to the plaintiff.   That during the term other improvements and fixtures were made and erected or put upon the demised premises by the defendant which, by the terms of the lease, became the property of the plaintiff, as a part of the brickyard demised.

"That the defendant failed to keep up and maintain a proper and substantial brickyard upon the whole of said premises, but permitted the same and the docks, sheds, buildings, machines, fixtures, additions and other improvements thereon, as well those thereon at the beginning of said lease, as those afterwards put thereon during said demised term, to become and remain out of repair, and to deteriorate and depreciate in value.

"That at the expiration of said lease the defendant failed to yield and surrender said premises to the plaintiff in good order and condition, and to leave the docks, yards and grounds in good, smooth and regular surface and condition, and free.

from deterioration, but that said docks, yards and grounds were left by the defendant out of repair; of uneven and irregular surface, and the facing upon said yards to a great extent broken and worn out.

" That the defendant during or at about the expiration of the term of said lease, removed or permitted to be removed and taken away from said premises certain buildings, sheds, pits, lumber, machines and other property belonging to the plaintiff, thereby depriving the plaintiff of the same and of the use thereof.

" That the defendent failed to put up, erect, maintain and leave upon said premises in good order and condition, a steam engine of sufficient capacity and horse power, with suitable buildings, and all machinery required therefor.

" That by reason of the premises the plaintiff has sustained damages in the sum of thirteen thousand four hundred and fifteen $\frac{70}{100}$ dollars."

The referee directed judgment for the plaintiff for the sum thus found as damages, with interest thereon from the date of the expiration of the lease, and the General Term has affirmed the judgment.

The covenants in the lease in question differ in some important respects, as will be seen, from the ordinary and usual covenants in a lease of real property to pay a specified rent for the use of the premises in money, and at the end of the time surrender the premises in as good condition as when the term commenced, ordinary use and damage excepted. Here the cash rent reserved was but a part of the compensation of the landlord for the use of the demised premises. The balance was to be paid by the tenant in making certain additions and improvements to the premises, so as to constitute, when completed, a proper and substantial brickyard, and to leave all these improvements, as well as those found upon the premises when he took possession, in *good condition*. Certain parts of what is called in the lease a brickyard the tenant was bound to create or furnish, such as machinery, fixtures and other improvements.   He was also to expend money and labor

upon what he found there when his term commenced, to put it in the condition specified in the lease, that is, *good condition*, and the whole to be kept in that condition up to the date of the expiration of the lease. The fulfillment of these covenants is, by the terms of the instrument, a part of the consideration for which the grant was made. The defendant having covenanted to "keep and maintain, at his own cost and expense, a proper and substantial brickyard upon the whole of the demised premises." This required the defendant to furnish everything necessary to such a yard not on the premises at the commencement of the term, and to keep it up during his term. The lease provides but for one yard, and that was to cover the whole premises. For the use of such a yard the defendant was to put up and maintain thereon a steam engine with sufficient capacity to operate the yard, with fixtures and all suitable buildings, and this was to be left upon the premises when the lease expired. The defendant was to "preserve the property from deterioration," and, therefore, was bound to do something with respect to the property to offset the natural wear and damage by the elements. The tenant was not to permit or allow bats to be thrown into the river near the bulkheads or docks so as to obstruct or interfere with free navigation or use of the water, or to make it in *any degree* more shallow. This required the tenant at the end of the term to remove any bats thrown, or which had fallen into the water in violation of this covenant, or to pay to the landlord the reasonable expense of removing them. As the referee adopted a construction of the lease in harmony with the one here indicated, he had only to inquire whether there was an actual breach of any of the covenants, and to determine the damages resulting therefrom, and these points presented questions of fact which he determined, upon conflicting evidence, in favor of the plaintiff. The legal conclusion is sustained by the findings, and the latter we are not permitted to review because they are certainly supported by some, if not by the just, preponderance of evidence. On the trial evidence was given by both parties as to numerous items of dam-

ages growing out of the breach by the defendant of the several covenants in the lease. This evidence related to the value of numerous articles, such as machinery and other fixtures which had been taken from the premises, and to still others of the same general character which were never put upon the premises by the tenant. The removal of these on the one hand, and the omission of the tenant to furnish and put them upon the premises on the other, were alike claimed to constitute a breach of the covenants, and the referee so held. The damages awarded, though made up of many items, are stated by the referee in his report in a gross sum. The argument of the learned counsel for the defendant is directed to certain items which he claims the referee included in his decision, and which went to make up the gross sum, which, he insists, should not have been allowed at all, or at a less sum than that awarded by the referee. That the plaintiff was entitled to recover a considerable sum as damages, is not seriously disputed, the main contention in behalf of the defendant being that the amount allowed is too large. We cannot know from the referee's report what particular items he allowed or rejected. The jurisdiction of this court to review errors of law cannot be intelligently or properly exercised in such a case unless all the facts bearing upon the legality of the disputed items are either found or the question presented by some specific request to find. The defendant made some general requests, which are sufficient to raise the question of any liability whatever as to certain items, but the question whether, upon the evidence, the sum allowed, on account of these items, is larger than it should have been, is not before us; that would require an examination of the evidence, a duty which we must assume was performed by the referee and the General Term. We have examined the evidence, however, in regard to the general liability of the defendant under the covenants for the several articles, as to which there is dispute. It seems that the defendant sublet the premises to other parties engaged in manufacturing brick. These parties had occupied the premises under a lease from plaintiff, prior to the one to defendant,

and had put upon the premises certain machines for making brick, buildings and other improvements. These improvements were on the land when defendant's term commenced, and were used by the former tenants of the plaintiff, who now became tenants of the defendant. With respect to these things, the plaintiff's position is that they were not removed by the parties who put them upon the premises at the expiration of their lease, and as they took a new lease without excepting them or claiming them as their property, their right of removal was lost, and they remained attached to the land and were the property of the plaintiff. (*Loughran* v. *Ross,* 45 N. Y. 792.)

Or at all events, the things were of such a character that the defendant was bound to put and leave them upon the land under the covenants. Neither the lease prior to 1877, nor the lease from the defendant are in the record, and we have not, therefore, before us all the facts with reference to this property, but we think that upon either ground the referee's finding should be sustained. The defendant did not put into the yard or leave there such an engine as the covenant calls for, but did put in a smaller one, the benefit of which it does not appear that the plaintiff ever had. So far as concerns this article the case is the same as if no engine had been furnished. Had the plaintiff taken the small one with the land, when the lease expired, she would be bound to allow for its value; but as that does not appear, the referee properly allowed for a suitable engine. It is said that this item erroneously includes the cost of a new engine, whereas the covenant contemplated its use before the lease expired, but an examination of the evidence and the opinion of the referee does not sustain this contention. The defendant was to leave the surface of the yard in a smooth condition, and it is found that this covenant was broken and we think it was. This condition of the surface is necessary in order to manufacture brick successfully, in the manner in general use when the lease was made, and the purpose was to have a yard, at the expiration of the demised term, in which the business could be successfully prosecuted.

The fact that since the lease was made other methods for making brick have been devised, which render this condition of the surface unnecessary, does not change the construction to be put upon the covenant, nor the defendants' liability under it. We have examined the rulings and other questions discussed by the learned counsel for the defendant and have reached the conclusion that the record does not disclose any error which requires a reversal of the judgment and it should therefore be affirmed.

All concur.

Judgment affirmed.