LYONS et al. v. WEEKS et al.

(Supreme Court, Appellate Division, First Department. July 17, 1900.)

WILLS—CONSTRUCTION—INTENTION OF TESTATOR.

Testator, being 78 years old, devised certain land to his son for life, remainder to the son's wife and children, share and share alike; "the issue of such as may have died to take the share to which his parent would have been entitled." Held, that testator's evident intention was that, on the death of a child occurring after his own demise and before that of his son, its issue should take, since testator's advanced age, as compared with that of his grandchildren, renders inapplicable the ordinary rule that a gift over in case of death refers to a death happening during the lifetime of testator.

Patterson, J., dissenting.

Appeal from trial term, New York county.

Ejectment by Alma B. Lyons and others, by guardian, against George W. Weeks and others. From a judgment in favor of defendants, and from an order denying a motion for a new trial (61 N. Y. Supp. 441), plaintiffs appeal. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Wm. B. Hamilton, for appellants.

F. B. Candler, for respondents.

INGRAHAM, J. The rule which I consider as decisive of the construction to be given to this will is stated by Judge Andrews in Vanderzee v. Slingerland, 103 N. Y. 56, 8 N. E. 249, that:

"Where the context of the will is silent, and affords no indication of intention, other than that disclosed by words of absolute gift, followed by a gift over in case of death, or of death without issue, or other specified event, the death over must be considered as a death happening before the death of the testator."

And, while this rule is well recognized, still, as Judge Andrews says, "the tendency is to lay hold of slight circumstances in the will to vary the construction, and to give effect to the language according to its natural import." It is apparent to those whose duty it is to construe instruments of this character that the enforcement of this rule often changes the disposition of property from that which the testator had in view when he made the will. That period when there is a bequest or devise of this character generally is that of the final disposition of the estate after the death of the life tenant, and it is of that period that a testator speaks when he provides for a devolution of interest upon the death of the remainder-man. That this has been recognized is, I believe, the cause of the tendency to vary the construction imposed by this rule where there is any consideration which, from the position, age, or condition of the testator and those interested, or from the will itself, would indicate that the testator had in view the death of the remainder-man before the termination of the life estate, rather than during his life. Now, in this will all of the surrounding circumstances would indicate that the testator could not have intended to refer to the death of the children of Jacob Weeks Cornwell during his own life. The testator was 78 years of age when he made the will, and died about 4 months after its execution. Jacob Weeks Cornwell, the life beneficiary, was his adopted son, many years younger; and, from the age and condition of the children of Jacob Weeks Cornwell, it is not probable that the testator contemplated their dying before him. In making provision for his adopted son and his family, he did not give to his adopted son power to dispose of the property, from which such provision was to be obtained, but himself disposed of it; thus indicating his intention to determine the manner in which the property should be ultimately disposed of. Upon the death of the adopted son the property was to be divided equally between his widow and children. Each was to have a quarter, but, to keep this property in the family and prevent its being dissipated, he

provided that, if either of those entitled to the remainder should die, the issue of the one dying should take the parent's share. This was not a case where the testator could have expected to live many years, or could expect to see his grandchildren, for whom he intended to make provision, grow up and die during his life. It was the will of an old man upon the brink of the grave, providing for those near and dear to him, by provisions which, as appears from the whole will, he endeavored, so far as possible, to preserve for those that he desired to benefit. Then the language that is used is significant. The clause in question comes immediately after the gift to the remainder-men, and is in connection with that gift, which is not to take effect until the death of the life tenant. It is "upon his [the life tenant's] death" that the property is given to the four remainder-men; and it is in connection with that gift upon the life tenant's death that there is a direction that the issue of such as may have died is to take the share to which his, her, or their parent living would have been entitled. The language used affords an indication of a like intention. It is "the issue of such as may have died to take." It seems to me that this language indicates that it is to those who may have died before the death of the life tenant, when the property is to come into the possession of the remainder-men, that was in the mind of the testator, and the whole of the will seems to confirm such an intention. Again and again the testator uses this, or substantially a like, phrase, to indicate his intention of substituting the issue for the parent in the event of the death of the latter, in cases in which he could not have contemplated the death of the parent during his (the testator's) life.

The judgment is therefore reversed, and a new trial ordered, with costs to appellants to abide the result.

VAN BRUNT, P. J., concurs.

McLAUGHLIN, J. (concurring). It is a cardinal rule governing the construction of wills that effect is to be given to the intent of a testator, when it can be done without violating settled rules of construction, and is not in hostility to some statute. In the case before us, I think the intent of the testator is manifest, and that effect can be given to it without in any way infringing upon or conflicting with this rule. By the third clause of his will, Jacob Weeks intended to give the land mentioned therein in trust to his executors, for the purpose of receiving the rents, issues, and profits of it, and, after making certain deductions, paying the balance to his adopted son during his life, and upon his death to give the same absolutely to the wife of his adopted son and their three children, Ida Van Cott, Clarissa Lyons, and Millard Filmore Cornwell, share and share alike, and, if at the death of the son either the wife or any of the children should be dead, that the share or interest which the one who had died would have taken if living should pass and belong to his or her children. That this was his intent seems to me so clear, from the language used by him, that it needs no argument to demonstrate it. The language, after giving the direction as to paying the income to the adopted son during his life, is:

"Upon his death, I give, devise, and bequeath the said lots of ground and buildings to Virginia Cornwell, wife of said Jacob Weeks Cornwell, Ida Van Cott, Clarissa Lyons, and Millard Filmore Cornwell, children of said Jacob Weeks Cornwell, share and share alike; the issue of such as may have died to take the share to which his, her, or their parent would have been entitled if living."

Clarissa Lyons died on the 17th of October, 1892, and Jacob Weeks Cornwell died on the 6th of November, 1898; and it is said that, if this was Jacob Weeks' intent, it cannot be carried out without violating settled rules of construction, because Clarissa died before the life beneficiary. In other words, it is contended that inasmuch as Clarissa, upon the death of Jacob Weeks, took a vested remainder, this upon her death (it having occurred before the life beneficiary) passed under her will, subject to the life estate or interest of the life beneficiary. It is undoubtedly true that Clarissa took a vested remainder upon the death of Jacob Weeks, but this remainder was, according to his intent, to be devested by her death, if it occurred prior to the death of his adopted son. As before indicated, she died before the life beneficiary, and thereupon her interest was devested and it passed to her children. Giving this construction to the clause of the will under consideration, the intent is carried out; and I do not think such construction conflicts in any way with the rule above alluded to, or is in hostility to any decisions to which our attention has been called. It certainly is in harmony with Flanagan v. Staples, 28 App. Div. 319, 51 N. Y. Supp. 10, recently decided by this court. In the Staples Case the testator gave to his wife the income from certain property during her life, and the will then provided:

"Upon the death of my said wife I give * * * all my estate and property unto my children, in equal shares. * * * In the event of any of my children leaving issue, * * * such issue shall take the share or portion which the parent would have taken if living."

One of the children (Joseph) died prior to the wife, the life beneficiary; and the contention was there made, as here, that the interest which Joseph would have taken had he been living at the death of the life beneficiary passed by the will, and not by the will of his father. This court, however, held that such was not the true construction of the father's will; that under the will each of the children took a vested remainder, which was subject to be devested in case of the child's death prior to that of the wife. There is no distinction in principle between that case and this. The language employed to express the intent of the testator in each will is substantially the same. We gave effect to the intent in that case, and I think we should give effect to it in this. The consideration of authorities in the construction of wills serves little purpose, for the reason that the ultimate object to be attained is to ascertain, and then give effect to, the intent of the testator, and that intent must necessarily be ascertained from each will, according to the language employed to express it. I am of the opinion that the judgment appealed from is wrong, and for that reason it should be reversed and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and O'BRIEN, J., concur.

PATTERSON, J. (dissenting).    I should be content to rest an affirmance of this judgment upon the opinion of the trial judge, were it not that the able and elaborate argument of the learned counsel for the appellants requires that there should be stated, more fully than the trial judge has done, the considerations which relate to the intention of the testator in making the dispository provisions of the third clause of the will.    In order that that may be done, it is necessary to review the whole case as it comes up on the record.

The action is in ejectment.    The infant plaintiffs, suing by their father as their guardian, claim to be entitled in fee to a one-third or a one-fourth interest as tenants in common (with others) of the locus in quo described in the complaint.    The claim is founded upon the contention that, under the terms of the third clause of the will of Jacob Weeks, they take directly from the testator in remainder.    It is argued that, under the terms of that clause, Clarissa (Clara Louise) Lyons took either a remainder contingent upon her survival of the beneficiary of a trust created thereby, or took a vested remainder subject to be devested, and that in either event, she having died during the existence of a particular estate, they come in by way of substitution, as owners in fee of the share claimed by them.    They also claim to be entitled to a one-twelfth interest, that being a fractional part of the one-fourth devised to their grandmother Virginia Cornwell by such third clause.    The principal defendant is Charles H. Ostrander, trustee under the last will and testament of Clara Louise Lyons.    He claims title under her will;  she having devised the one-fourth interest involved in this action to him as trustee for the benefit of the plaintiffs, her infant children.    His claim as trustee is that under the third clause of the will of Jacob Weeks there was an absolute remainder in fee of the interest given to Clarissa Lyons, which she could dispose of by grant or devise.    The clause of the will requiring construction, and upon which the claims of the respective parties rest, is the following:

"(3) I give, devise, and bequeath to my executors hereinafter named the lots of ground and the buildings erected thereon [describing them], upon trust to collect the rents, profits, and incomes thereof during the life of my adopted son, Jacob Weeks Cornwell, son of John T. and Ann Cornwell, and after expending therefrom such amounts as they deem necessary to keep the said premises in good order and repair, and properly insured against loss and damage by fire, to pay the remainder of such rents, as and when collected, to my said adopted son, Jacob Weeks Cornwell, during his life.    Upon his death, I give, devise, and bequeath the said lots of ground and buildings to Virginia Cornwell, wife of said Jacob Weeks Cornwell, Ida Van Cott, Clarissa Lyons, and Millard Filmore Cornwell, children of said Jacob Weeks Cornwell, share and share alike;  the issue of such as may have died to take the share to which his, her, or their parent would, if living, have been entitled."

The will of Jacob Weeks was proven in 1881.    Jacob Weeks Cornwell, the life beneficiary under the third clause, died on the 16th of November, 1898.    His wife, Virginia Cornwell, died intestate in June, 1890, leaving three children,—Ida Van Cott, Clara Louise Lyons, and Millard Filmore Cornwell.    Clara Louise Lyons died on the 17th of October, 1892, leaving, her surviving, three infant children, the plaintiffs herein.    It will thus be seen that Virginia Cornwell and Clara Louise Lyons died during the continuance of the particular or precedent estate in the trustees under the will of Jacob Weeks.    If

this third clause of the will of Jacob Weeks is to be construed independently, the ordinary rule of vesting would apply to it, and the wife and three children named, of Jacob Weeks Cornwell, under that rule, would have taken vested remainders. The provision as to the issue of any one of those remainder-men dying would, according to that ordinary rule, refer to the death of such remainder-men during the lifetime of the testator. The cases cited in the opinion of the trial judge are authority to that point. Moore v. Lyons, 25 Wend. 118; Livingston v. Greene, 52 N. Y. 118; In re Mahan, 98 N. Y. 372; Nelson v. Russell, 135 N. Y. 137, 31 N. E. 1008; In re Tompkins' Estate, 154 N. Y. 634, 49 N. E. 135; and other cases. "Words of survivorship and gifts over on the death of the primary beneficiary are construed, unless a contrary intention appears, as relating to the death of the testator." Nelson v. Russell, 135 N. Y. 141, 31 N. E. 1008, citing Vanderzee v. Slingerland, 103 N. Y. 55, 8 N. E. 247, and In re New York, L. & W. R. Co., 105 N. Y. Y. 92, 11 N. E. 492. And the interposition of a trust title, or the qualified particular estate of a trustee, does not prevent the operation of the ordinary rule as to vesting. In re Tompkins' Estate, 154 N. Y. 634, 49 N. E. 135. The words "upon his death" (the beneficiary's) do not create a contingency, but point out when the remainder shall take effect in possession,—the commencement of the enjoyment of the estate. Livingston v. Greene, 52 N. Y. 123.

The vexed question in this case relates to the intention of the testator, and we are called upon to ascertain from all the provisions of the will whether he meant that the words relating to the issue of the children of Jacob Weeks Cornwell, taking the share to which the parent would have been entitled, should create a remainder over, to take effect upon the death of the parent during the continuance of the trust, or whether they were used merely by way of substitution, and to prevent a lapse in case the parent should not be living at the time of the death of the testator. It is urged that under the third clause of the will the remainders to the wife and three children of Jacob Weeks Cornwell are contingent, but we can find nothing in that clause, nor in any of the other provisions of the will, which takes this devise out of the rule of the statute respecting vested remainders. Not only were there persons in being, but those persons were specifically named to take in possession immediately upon the expiration of the particular estate; and, if Jacob Weeks Cornwell had died the day after the testator, the remainder would have vested in possession in equal parts in the four persons named. The inquiry, therefore, is whether there was a vested remainder, subject to be devested on the death of either of the four persons named during the lifetime of Jacob Weeks Cornwell, or during the continuance of the particular estate which the trustees had, for the purposes of the trust, created for the benefit of Jacob Weeks Cornwell. The rule of construction applied by the court below has frequently been referred to as an artificial one, which will be made to yield to slight circumstances indicating a testator's intention that it shall not control. The expression of Judge Andrews in Vanderzee v. Slingerland, 103 N. Y. 55, 8 N. E. 247, that the tendency is to lay hold of slight circumstances in the will to vary the construction and

give effect to the language according to its natural import, is frequently quoted with approval; but as remarked by Rapallo, J., in Re New York, L. & W. R. Co., 105 N. Y. 92, 11 N. E. 492, the rule is uniformly adopted, unless there is some language in the will indicative of a different intention on the part of the testator. As the interests in remainder of the wife and children of Jacob Weeks Cornwell cannot be regarded as contingent, it is quite obvious that the construction contended for by the appellants would lead to intestacy as to the interest intended for Virginia Cornwell; for such remainder did not pass under a disposition of the residuary estate, and certainly does not come within the operation of the twenty-fifth clause. Upon scrutinizing the will of this testator, there are two things strikingly prominent: The first is that he intended that his will should operate upon the whole of his property, and all interests therein, or, as Judge Earle expressed it on a survey of the whole will, "the testator did not intend to die intestate as to any of his real estate, and it is, therefore, our duty, if we can, to so construe his will as to effectuate that intention." Weeks v. Cornwell, 104 N. Y. 337, 10 N. E. 431. Second. It is quite apparent, from the structure of the whole instrument, that it was the intention of the testator to make an independent disposition of specific pieces of property for the benefit of a particular set of devisees, and that each devise was to be a separate and independent thing, or, as the general term of the supreme court expressed it in Weeks v. Cornwell, 9 Civ. Proc. R. 28, "each trust was as separate and distinct as though it had been created by a different instrument from that creating each of the others."

I am not able to concur in the view that there is a general scheme and purpose of the testator, running through the whole will, to preserve the interest in remainder of the property embraced in each trust for the benefit of the descendants of each life beneficiary, and for as long a period as the law would permit. That contention is not justified by a comparison of various trusts created by the will, nor is it authorized by a consideration of such circumstances surrounding the testator as may be legitimately referred to in the effort to ascertain his intention. Doubtless, we may refer to his age, the situation and value of his estate, and to his relationship with those who are the recipients of his bounty. His first desire, evidently, was to provide for his widow; next, for his adopted son, Jacob Weeks Cornwell, and for the immediate family of that adopted son. Hence he provides amply for the widow, and then devises the most valuable parcels of his real estate, subject to a life interest (not estate) of his adopted son. His purpose is to give to that adopted son's wife and named children, subject to a trust, all of the property embraced in that particular trust. In the third clause, as in every other trust clause, there is a distinct specific disposition of the whole fee of the realty covered by it. It would seem as if the testator had carefully avoided the possibility of one of the trusts running into, or being controlled or affected by, any of the others, and it would also seem that he intended the substitutionary provision of the third clause as one only to prevent a lapse, and that he did not intend that the issue of the children of Jacob Weeks Cornwell should come in in any other manner; for he has made

in his will specific provision for the issue of each of the grandchildren of Jacob Weeks Cornwell, the life beneficiary in the third clause. In the twentieth clause he creates a trust for the benefit of Clarissa Lyons, daughter of the adopted son, Jacob Weeks Cornwell, for life, with remainder in fee to "the heirs" of the said Clarissa Lyons, share and share alike; and similar provisions are created in these trusts for the heirs of other children of Jacob Weeks Cornwell. I think there is much significance to be attached to the fact that in the third clause the remainder-men are specifically named.

It is claimed that, looking at the circumstances under which the will was made, and comparing the language of the third and fourth clauses, the inference must be drawn that Jacob Weeks, at his advanced age, could not have intended that the words of substitution in the third clause should relate to the death of either of the four named remainder-men during his (the testator's) lifetime. He was, it is true, at the time the will was made, about 78 years old. We cannot assume from the mere fact that he was an aged man that he did not contemplate the death of the wife or one or more of the children of his adopted son during his (the testator's) lifetime. It must be admitted that the fourth clause of the will, providing for the other Jacob Weeks Cornwell, should be construed differently, because the situation of that family, as shown in the proof, would make it apparent that the testator could not have contemplated that the only infant child of Jacob Weeks Cornwell, then only two years of age, should grow up, marry, have issue, and die leaving issue, within the lifetime of the testator. It would be fair to presume in that case, as in the provisions in the seventh, eighth, ninth, and certain other clauses of the will, the substitution of heirs or issue related to the death of the primary remainder-men during the continuance of the particular estate. But there is nothing from which it can be definitely inferred that the testator had any other than a fixed intention with respect to each of the 17 trusts, as an independent and separate thing; and I am strongly persuaded that he intended that there should be a difference between the provisions of the third and of the fourth clauses and the trusts in other clauses, for the reason that in the third clause he has specifically named the children of Jacob Weeks Cornwell, and in the other clauses he merely gives the remainders to the "heirs" or the "issue," without naming any of such issue, but giving only the names of the wives of the beneficiaries. I do not find that any instruction as to the view to be taken of this third clause is to be derived from what was decided by the court of appeals concerning the twenty-fourth and twenty-fifth clauses of the will when it was before that court in the case of Weeks v. Cornwell, 104 N. Y. 337, 10 N. E. 431. I think the ordinary rule of vesting should be applied here, and that we should refrain from attributing to the testator an invented posthumous intention at variance with the clear rule of law applicable to the construction of the third clause as an independent dispository provision of the will; and I am in favor of an affirmance of the judgment, with costs.