Appeals in Quigley v. Thatcher, 207 N. Y. 66, 100 N. E. 596, when it said:

"This statute is one for the protection of workmen from injury, and undoubtedly is to be construed as liberally as may be for the accomplishment of the purpose for which it was  *  *  *  framed."

Under this interpretation, while admitting that were the Labor Law to be strictly construed the employé of a subcontractor could not recover from a contractor, yet under certain circumstances the contractor might be held liable to such employé for the insecurity of a "scaffold." When the Legislature used the word "scaffold," it used a word of definite meaning and one susceptible of precise application; and to inject into that meaning what was neither expressed nor intended would be judicial legislation, and not interpretation. To broaden the scope of the reasoning in the Quigley Case is for the Legislature, and when the language used in the statute is plain and unambiguous there is nothing to interpret. It is not for this court to say that, when the Legislature required safe scaffolding to be furnished, it meant anything wider or narrower in scope than its plain expression.

[2, 3] 2. The doctrine of a safe place to work does not apply to this case. The pipe was in a temporary location while the work was going on about it, and its position was changed as the exigencies of the work required. The pipe had nothing whatever to do with the construction work. There is no evidence that the deceased was ordered by any one to go upon this pipe, so that section 200 of the Labor Law is inapplicable. All of plaintiff's witnesses agreed that the conditions where deceased was working were constantly changing; that the deceased chose his own place to work and the particular place in this case. Furthermore, viewing the case as an action at common law, there is an entire absence of testimony showing the deceased's freedom from contributory negligence. To have submitted the case to the jury would have invited speculation, conjecture, and surmise.

On the whole case, as stated on the granting of the motion to dismiss the complaint, I am of the opinion that there was no question for the jury to pass upon. I therefore deny the motion for a new trial.

---

(88 Misc. Rep. 14)

### SCHWEGLER REALTY CO. v. AUDUBON NAT. BANK.

(Supreme Court, Appellate Term, First Department. December 4, 1914.)

1. LANDLORD AND TENANT (§ 160*)—COVENANTS—SURRENDER IN GOOD CONDITION.

    Under a lease covenanting that the tenant should take good care of the premises, and make no alteration without the written consent of the lessor, and deliver the premises in good condition, the tenant, even though permission was given to make alterations, was bound to surrender the premises in as good condition as they were at the commencement of the term.

    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 612-626; Dec. Dig. § 160.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. LANDLORD AND TENANT (§ 152*)—ALTERATION—LIABILITY.

Under such lease the acts of the tenant in taking out fixtures, etc., leaving window glass and heavy bars over the windows broken, the floor replaced by a tile floor and the natural finish quarter oak partly covered with red stain, was an "alteration," in breach of the covenant.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 152, 538–543, 545–549, 551–557; Dec. Dig. § 152.*]

3. LANDLORD AND TENANT (§ 160*)—COVENANTS—SURRENDER IN GOOD CONDITION.

Such condition of the premises was a breach of the covenant to surrender in good condition, entitling the lessor to a recovery.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 612–626; Dec. Dig. § 160.*]

4. FIXTURES (§ 32*)—REMOVAL—LANDLORD AND TENANT.

Where a tenant removes domestic or trade fixtures, he must do so with as little injury as possible, and where the injury is more than insignificant must replace and restore the premises to their original condition.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 63, 65; Dec. Dig. § 32.*]

Appeal from Municipal Court, Borough of Manhattan, Seventh District.

Action by the Schwegler Realty Company against the Audubon National Bank. From a judgment for defendant after trial without a jury, plaintiff appeals. Reversed, and new trial ordered.

Argued October term, 1914, before SEABURY, BIJUR, and COHALAN, JJ.

Joseph Day Lee, of New York City, for appellant.

Peter Condon, of New York City (Augustus L. Richards, of New York City, of counsel), for respondent.

COHALAN, J. This is an action to recover damages for the alleged failure of the defendant to surrender certain leased premises in good condition. The premises, under a written agreement, were leased in 1909 for two years, and they were to be used as a banking office. In June, 1911, a second lease was made, extending the term for two years and three months from the 1st day of October, 1911. In both leases there is contained the following covenant:

"That the tenant shall take good care of the premises, and that no alterations are to be made on same without the written consent of the party of the first part, and at the end or other expiration of the term shall deliver up the demised premises in good order or condition, damages by the elements excepted."

[1] It is upon the breach of this covenant that the action is based. The court below found that the lessor had consented to the making of the alterations and the installation of certain fixtures, and thereupon decided that under neither lease was the plaintiff entitled to recover damages on the surrender of the premises. But even though permission was given to the defendant to make the changes in the beginning, nevertheless the defendant was bound to surrender the premises in as good condition as they were at the commencement of the term. Scott v. Haverstraw Clay Co., 135 N. Y. 141, 31 N. E.

1102; Lazarus v. Ludwig, 45 App. Div. 486, 61 N. Y. Supp. 365; McGregor v. Board of Education, 107 N. Y. 511, 14 N. E. 420.

[2, 3] There was evidence in the case that the premises were returned with walls and ceilings broken, with window boxes and radiators removed, with heavy bars over the windows and window ledges broken, with natural finish quartered oak trim partly covered with red stain, with a large window glass broken, and with the floor replaced by an irregular shaped tile floor. Defendant contends by the making of the second lease the landlord waived any breach of the covenant to surrender the premises in good order or condition, as provided for in the first lease; that its obligation at the end of the second lease was to surrender the premises in the same condition that they were in at the beginning of the second term, less the fixtures. Whatever the tenant's right was with respect to the removal of the fixtures during the first lease, it is plain that, although it agreed in the second lease not to make any alterations in the premises and to return them in good condition, it breached both of these covenants. It cannot be said that the taking out of the fixtures, partitions, paneling, and other changes was not an alteration, and the damaged condition of the premises indicates that they were not surrendered in good condition. It follows that, so far as the second lease is considered under the circumstances of this case, the plaintiff was not precluded from a recovery. In all cases where the defendant removes domestic or trade fixtures, he must do so with as little injury as possible, and where the injury done is more than insignificant, he must repair and restore the premises to their original condition. Underhill on Landlord and Tenant, p. 1257.

The judgment is reversed, and new trial ordered, costs to the appellant to abide the event. All concur.