Ann McGregor, Appellant, *v.* The Board of Education of the City of New York, Respondent.

Plaintiff leased certain premises, which had been occupied as a dwelling-house to defendant, to be used as a public school. The requisite altera-tions in the interior were permitted by the lessor and the lessee covenanted to make them and also to surrender the premises at the expiration of the lease "in the same condition as they were at the execution of this lease, reasonable use and wear thereof as a public school and damages by the elements excepted." The lessees changed the dwelling-house into school rooms, removing partitions, etc. This lease was followed by three others in similar form, each executed before the termination of the preceding one. After the termination of the last lease and the surrender of the premises, this action was brought, among other things, to recover damages for a breach of the covenants as to condition on surrender. Plaintiff proved that the premises were in good condition when leased, and that when surrendered the walls, floor and glass in the windows were broken, the basement filled with refuse and the sidewalk broken by dumping coal thereon, some of the balusters of the stairs gone, etc. *Held*, that defend-ant was not bound to restore the premises to their former condition as a

dwelling-house; but that the evidence showed other damages, and the question as to whether or not they resulted from a reasonable use of the premises for school purposes was one of fact, and a submission of the same to the jury was proper.

Also, *held*, that plaintiff was not required to show the separate damage at the end of each term; it was sufficient to prove a breach of covenant, referable to one or more or all of the leases; also, that the delivery of each new lease was not a waiver, and did not estop plaintiff from claiming a breach of the covenant in the former one.

The rule that where there has been an implied surrender of possession by a tenant, by acceptance of a new lease, he loses all rights dependent upon the continued existence and validity of the surrendered lease, applies simply to such rights as can exist only while the lease continues; it does not extinguish rights of action already accrued.

(Argued October 24, 1887; decided December 13, 1887.)

APPEAL from order of the General Term of the Court of Common Pleas in and for the city and county of New York, made May 15, 1885, which reversed a judgment in favor of plaintiff entered upon the report of a referee. (Reported below, 13 Daly, 195.)

The nature of the action and the material facts are stated in the opinion.

*John J. Macklin* for appellant. The plaintiff had a right to recover damages in consequence of the failure of the defendant to return the premises in condition fitted for dwelling purposes, as he had received them. (*Marvin* v. *Stone*, 2 Cow. 781; *Ripley* v. *Larmouth*, 56 Barb. 21; *McAdam's Land. & Ten.* [2d ed.] 149; *Benton* v. *Marvin*, 52 N. Y. 570; *Bookstaver* v. *Jayne*, 60 id. 146; *Remington* v. *Palmer*, 62 id. 31; *Springstein* v. *Sampson*, 32 id. 703; *Reynolds* v. *C. Ins. Co.*, 47 id. 597.) The exception, reasonable use and wear thereof as a public school only meant the natural and unavoidable decay or depreciation arising from accidental causes in using the premises as a school. (Taylor, §§ 327, 357, 360, 362, 364, 367; *Lochrow* v. *Horgan*, 58 N. Y. 635; *McAdam* [2d ed.], 146, 147, 304, 406; *Suydam* v. *Jackson*, 54 N. Y. 450, 453; *Waring* v. *Hutchins*, 5 Barb. 666.) A liability for the breach of a contract cannot be released excepting by an instrument under seal, or by the acceptance of something in

satisfaction of the wrong done (*McKnight* v. *Dunlap*, 5 N. Y. 537), and the cancellation of the instrument itself, which contains the covenant, is not a discharge of liability for an existing breach. (*Roe* v. *Conway*, 74 id. 201, 206; Comyn on Cont., 47; *Crawford* v. *Millspaugh*, 13 Johns. 87; *Allaire* v. *Whitney*, 1 Hill, 484.) The claim that there was a waiver or release of liability is an affirmative defense, and the facts upon which it was based must be specially pleaded, otherwise it is not available. (*McKyring* v. *Bull*, 16 N. Y. 297.)

*D. J. Dean* for respondent. The giving and acceptance of a new lease was in each case a surrender of the lease previously in force. (*Livingston* v. *Potts*, 16 Johns. 78; *Springstein* v. *Schermerhorn*, 12 id. 357; *Loughran* v. *Ross*, 45 N. Y. 792; *Coe* v. *Hobby*, 72 id. 145.) There having been a surrender of each of the leases, excepting the last, the landlord let the premises and the tenant occupied them under a new tenancy in each successive instance, and the rights which existed under the former tenancy not being expressly retained in the new lease, must be deemed to have been abandoned. (*Watriss* v. *First Nat. B'k*, 124 Mass. 571; 26 Am. R. 694; *Harris* v. *Hiscock*, 91 N. Y. 340; *Tice* v. *Zinsser*, 76 id. 549.) The plaintiff must be deemed, from all the circumstances of the lease, to have waived the alleged violation of the covenants contained in the first three leases, and is estopped from claiming any damage by reason thereof. (*Townsend* v. *Scholey*, 42 N. Y. 20; *De Herques* v. *Marti*, 85 id. 609; *Conger* v. *Duryee*, 90 id. 594; *Murray* v. *Harway*, 56 id. 337; *Camp* v. *Pulver*, 5 Barb., 91; *Ireland* v. *Nichols*, 46 N. Y. 413; 2 Sweeny, 289; *Collins* v. *Hasbrouk*, 56 N. Y. 157.) To allow the plaintiff to claim damages because the building restored to her in November, 1881, was not in the same condition in which it was in 1874, when by her own act she had leased it in April, 1881, stipulating only that it should be returned in the condition in which it then was, there being no evidence as to what that condition was, would be to make a new contract between the parties and enforce a

covenant that neither of them had in mind. ( *Witty* v. *Matthews*, 52 N. Y. 512; *Dunn* v. *Sayles*, 5 Q. B. 685; *Aspdin* v. *Austin*, id. 671; *Standen* v. *Christmas*, 10 id. 135; *Churchward* v. *Ford*, 2 H & N. 446.)

Finch, J.    This action was brought by a landlord against a tenant upon covenants contained in leases.    The plaintiff rented the premises to the defendant to be used for the purposes of a public school.  · Alterations in the interior to accommodate that use were permitted by the lessor to be made by the lessee, and were alike contemplated by each when the contract was made.    A printed form of lease was used to contain and express the agreement from which the clause forbidding alterations was stricken out before execution.    There was also an express covenant that the lessee should make all requisite alterations, and a further covenant on its part to surrender the premises at the expiration of the lease " in the same condition as they were at the execution of this lease, reasonable use and wear thereof as a public school and damages by the elements excepted."    The lessee entered and changed the dwelling-house into school rooms, removing partitions and making alterations necessary for the new use.    This lease was followed by three others in similar form, each executed before the termination of its predecessor, and the last one ending the term on November 1, 1881.    The complaint set out the lease and continued occupation and alleged a breach of the covenant for restoration, averring that " the premises were left in a condition utterly unsuitable for a dwelling-house " and " uninhabitable for any purpose," and that water taxes to the amount of about $96 had been left unpaid, and settled by the lessor.    The answer took issue upon these allegations, but was followed by an offer of judgment for $125 and costs to that date.    The offer was not accepted and the action went to trial.    The plaintiff gave no proof of the condition of the premises at the date of the letting beyond the fact that they were then in the form of a dwelling-house, the rooms in which had been previously let to several occupants, and the general

statement of one witness that the premises at that time were "in excellent condition," and the pavement in front of the premises was "in good condition." This witness, at the date of the lease, was a child about eleven years old, living in the adjoining house, but saying she "used to go through the premises in question," "playing with the other children there." This evidence, although very weak in itself, was, in no respect, controverted, and sufficiently established that the premises were in good condition when leased. The plaintiff then proved the condition of the building after it was surrendered by the defendant. The witness said "the walls were broken, the floor was broken, the basement was used for refuse." She added that the sidewalk was broken by the dumping of coal upon it. The plaintiff further proved the payment by her of Croton water rents amounting, with interest, to $103, and repairs of the sidewalk to the amount of $40, and then called two witnesses, a carpenter and mason, who testified to the condition of the premises when finally surrendered. They said the first floor had sagged from the removal of partitions and was almost worn through; that the shutters were in bad condition; that the glass in the windows was in many cases broken; that the mantel pieces were in bad order; that the walls and ceiling had been boarded over, the nailing going through the plastering; that the balusters of the stairs were loose and some missing; and that the cellar was full of rubbish.

At the close of the plaintiff's case the defendant consented that judgment might be given for the water rent and interest, but as to the remaining causes of action moved for a dismissal of the complaint upon three grounds, which motion was denied. These grounds were as follows: First, that no violation of the covenant had been shown since the lease contemplated alterations in the premises, and that they were to be used as a school. This ground was not sufficient to justify a dismissal of the complaint. Granting that the defendant was not bound to restore the premises to their former condition as a dwelling-house, which under the terms of the leases, we deem a correct proposition, it is still true that damages to the premises were proved which

were not the effect or result of the alterations. Whether these injuries did or did not flow from a reasonable use of the premises for school purposes, was a question of fact, and proper to submit to the jury. They might easily think that broken window panes, battered doors, missing balusters, filthy walls, and a cellar filled with refuse, did not result from such reasonable use, and so was not excused by the terms of the lease.

The second ground of nonsuit is one which the General Term sustained in their reversal of the verdict. It was that no violation of the covenant in the last lease had been shown; and there was a waiver of such violation of the covenants in the prior leases. The fourth and last lease was dated April 16, 1881, and its covenant of restoration was to the condition of that date and such condition was wholly unproved. But the complaint relates to a continuous possession under all the leases, and while the plaintiff did not show the separate damage at the close of each term, and so prove four distinct causes of action, she did prove a breach of covenant referable to some one or more, or all of the leases, and it is quite immaterial which since the covenant existed and was the same in each. The alleged acts of waiver may be considered in connection with the second and third grounds of the defendant's motion, which were in substance, that each new lease was a surrender accepted of the prior one, and she is estopped from asserting a violation of the covenants in the leases ended by such accepted surrender.

It is, perhaps, true that each new lease involved a surrender to the landlord of the lessee's possession under the prior one, though they all ran to their termination, and there was no surrender of the leases themselves. (*Livingston* v. *Potts*, 16 Johns. 28; *Springstein* v. *Schermerhorn*, 12 id. 357.) But such surrender, instead of being actual, was implied from the presumed intention of the parties, and devised to give consistency to the new lease. I think it never should be made to work an injustice to the contracting parties in hostility to their real agreement. It is also true that, where there has been such implied surrender, the tenant loses all rights

dependent upon the continued existence and validity of the surrendered lease. (*Loughran* v. *Ross*, 45 N. Y. 792.) But that is because the right lost or extinguished could not survive the destruction of the lease and the ending of its term, and could exist only while the lease continued. Taking the new lease and ending the old one destroyed the right to remove buildings or the right to estover dependent wholly upon the ended lease. And I cannot discover that the doctrine ever went further and sufficiently to include the present case. Certainly a surrender of the lease during the term, and its acceptance by the landlord, does not extinguish rights of action already accrued. We have held that as to rent in arrears and overdue. (*Sperry* v. *Miller*, 16 N. Y. 407.) And where, at the close of a term, there is surrender of possession by a tenant in such condition as to violate a covenant in the lease, and an acceptance of possession by the landlord, the two things occurring *eo instanti*, I am not ready to admit that the right of action for a breach dies at the moment of its birth. It is true that the landlord accepting the possession with knowledge of the facts or full opportunity to know, and without protest or claim of injury or of violated covenants, may be deemed to have admitted performance of the covenant and waived any right of action for its breach; but the mere acceptance of possession in and of itself dissevered from the surrounding circumstances which characterize and qualify it, I think, should not produce that result. At least, it should not flow from a mere technical or implied surrender, where there is, of course, neither opportunity of knowledge nor occasion for protest, and where, as here, consecutive leases operate in effect as renewals and produce in substantial result one unbroken and continuous term. We are of opinion that the question of breach in the condition of the premises should relate to the final and actual surrender, and not be controlled by the legal and technical surrenders occurring along the line.

The verdict of the jury when compared with the evidence indicates that they awarded nothing for the defendant's failure to restore the premises to the condition of a dwelling-house and the charge of the courts eems to have assumed that such

would be their action. But if the fact were otherwise the result would not be changed, for the defendant raised no objection to the evidence and took no exception to the charge of the court, and made no request that the jury should confine their verdict to damages outside of the alterations. The plaintiff did request a charge that injuries resulting from failure to restore the premises to the condition of a dwelling-house should be awarded, which the court declined by saying that the whole covenant had been read to the jury. Neither side took any exception. Since there was evidence proper to go to the jury and a question for them to decide, and no exception was taken to the manner of the submission the verdict must stand. If they were left to determine a question of law as well as one of fact, it is a sufficient answer that both sides acquiesced by making no objection.

The judgment of the General Term should be reversed, and that of the trial court affirmed with costs.

All concur.

Judgment reversed.