## REINHEIMER v. MAYS.

No. 9065—Opinion Filed March 4, 1919.

Further Rehearing Denied July 8, 1919.

(Syllabus by the Court.)

### 1. Landlord and Tenant—Lease — Lessee's Breach—Damages.

In a lease providing that "at the termination of this lease contract, party of the second part hereby agrees and binds himself, his heirs, executors, administrators and assigns to surrender the peaceable and exclusive possession of said house and premises to said J. G. Mays, his heirs, assigns, executors or administrators, in the same condition as he may have received them, ordinary wear and tear and damage by fire, wind, and rain excepted," the rule as to the measure of damages for failure on the part of the lessee to deliver the premises as provided under this provision is the reasonable and necessary cost for their restoration to the condition in which they were received by him.

### 2. Evidence—Parol Evidence—Written Contract.

In the absence of fraud, accident, or mistake, where parties meet and negotiate concerning a contract, discuss its proposed terms and conditions, and finally end the matter by executing a written contract fully covering the subject, it represents the final agreement of the parties, and parol evidence tending to vary, contradict, enlarge or narrow its terms is not permissible.

Error from District Court, Grady County; Will Linn, Judge.

Action by J. G. Mays against William Reinheimer. Judgment for plaintiff, and defendant brings error. Affirmed.

Former opinion, published in 174 Pac. 752, withdrawn.

Riddle & Hammerly, for plaintiff in error.

Welborne & Bailey, for defendant in error.

PITCHFORD, J. This action was commenced in the district court of Grady county by the defendant in error against the plaintiff in error, to recover damages for breach of a lease contract on two counts. The parties will be referred to as they appeared in the trial court. The plaintiff for his cause of action alleges, in so far as material to the issues here, that on the 22d day of October, 1909, plaintiff and defendant entered into a rental contract whereby the defendant leased from the plaintiff a certain building in Chickasha, Okla., to be used for the purpose of conducting a gents' furnishing store, the lease being for the term of five years. The lease contains the following provision:

"At the termination of this lease contract, party of the second part hereby agrees and binds himself, his heirs, executors and administrators and assigns to surrender the peaceable and exclusive possession of said house and premises to said J. G. Mays, his heirs, assigns, executors or administrators in the same condition as he may have received them, ordinary wear and tear and damage by fire, wind and rain excepted."

The plaintiff alleges that the defendant breached this provision by removing a portion of the partition wall between the leased premises and the building adjoining, making one room, and by changing the front of said building, and that the plaintiff was thereby damaged in the sum of $701.25. For the second cause of action, the plaintiff alleges that he entered into a contract with the defendant on the 7th day of December, 1914, whereby the defendant was to have the use of said storeroom in said building and to pay therefor a rental of $65 per month; that the defendant continued to occupy the premises and pay the rent until the 1st of June,

1915, when defendant abandoned the premises and refused to pay the rent for the remainder of the year. Plaintiff alleges that he made an effort in good faith to lease said premises after the defendant abandoned the same, but was unable to secure a tenant, and therefore, by reason of the breach of said lease, plaintiff was damaged in the sum of $455. The defense interposed by the defendant was that the changes made in the building by him were made by reason of an agreement and understanding with the plaintiff, and that the only condition imposed on him by the plaintiff in making the changes was that the defendant should pay the expenses of the changes and remodeling of said building. There was a trial to the jury, and verdict and judgment rendered for the plaintiff for the sum asked for in the petition, to wit, $1,156.25. From this judgment the defendant appeals, and assigns as error that the verdict of the jury was contrary to the evidence and the law, and against natural justice, was unconscionable and inequitable.

The defendant over the objection of the plaintiff was permitted to introduce evidence to the effect that the defendant occupied the Inman Building adjoining the building leased from the plaintiff; that a partition wall supported the two buildings; that the defendant desired to lease the plaintiff's building and throw the two into one for the purpose of conducting a gents' furnishing store; that it was well known to the plaintiff that it would be necessary, before the building could be used for the purposes intended, to remove a portion of the partition wall.

If all this was contemplated at the time of the execution of the lease, why not have the same incorporated therein? Why have the lease to contain provisions in direct conflict with the understanding of the parties? A written contract is presumed to incorporate the agreement of the parties. There is no ambiguity in the lease in the instant case; fraud is not charged; no accident or mistake is alleged. There is a long line of decisions of this court holding that in the absence of fraud, accident, or mistake, where parties meet and negotiate concerning a contract, discuss its proposed terms and conditions, and finally end the matter by executing a written contract fully covering the subject, it represents the final agreement of the parties; and parol evidence tending to vary, contradict, enlarge, or narrow its terms is not admissible. Miller Bros. v. McCall, 37 Okla. 634, 133 Pac. 183; Kirkbride,Drilling & Oil Co. v. Satterlee, 32 Okla. 22, 121 Pac. 635; Gamble v. Riley, 39 Okla. 363, 135 Pac. 390; German Stock Food Co. v. Miller, 39 Okla. 634, 136 Pac. 426; Coyle v. Arkansas V. & W.

R. Co., 41 Okla. 648, 139 Pac. 294; Spalding v. Howard, 51 Okla. 502, 152 Pac. 106.

We have examined the authorities cited by plaintiff in error, but fail to see wherein the same are applicable to the case at bar. The case of McGregor v. Board of Education of the City of New York, 107 N. Y. 511, 14 N. E. 420, arose out of an action by the lessor against the lessee under a lease whereby the premises were let to the defendant to be used for the purpose of a public school. Alterations in the interior of the building were permitted by the lessor to be made by the lessee. In the printed form of the lease used to express the agreement, the clause forbidding alterations was stricken out before execution. There was also an express covenant that the lessee should make all requisite alterations, and a further covenant on their part to surrender the premises at the expiration of the lease, "in the same condition as they were at the execution of this lease, reasonable use and wear thereto as a public school and damages by the elements excepted." The lessee entered and changed the dwelling house into school rooms, removing partitions and making alterations necessary for the new use. This lease was followed by three others in similar form. The lease itself discloses that alterations were contemplated at the time by the parties.

In the case of Chesapeake Brewing Co. v. Goldberg, 107 Md. 485, 69 Atl. 37, 15 Ann. Cas. 879, the lease contained this clause:

"And the said lessee hereby covenants and agrees with the said lessor * * * that he will keep said premises in repair, and surrender the same at the end of the term hereby created, or any renewal thereof, in the same condition as they now are, losses by fire and acts of God excepted."

At the trial it was proven without objection that at the time the lease was made it was understood and agreed between the parties that the property should be improved and put in good condition before the lessee entered into possession. The lessee agreed to pay $100 toward these repairs and improvements, which cost, as testified to by the lessor, $550 or $650. The lessor testified that he overhauled the property from top to bottom, and delivered it to the defendant brewing company in good condition. He further stated that he told the defendant company that if they would pay $100 he would rent it to them, and they agreed and fulfilled their contract, and it was held that the evidence of this collateral agreement to improve the property before the lessee entered, if not legally admissible, yet being admitted without objection, should be considered and allowed

its full force and effect; that when evidence is let in generally without objection and no attempt is made in the trial court to limit or confine its effect, it is in for all purposes, and must be considered and allowed its full force. There was other evidence in the case let in without objection, tending to prove that before the repairs were made the property was in such bad condition that it was not fit for use. These improvements seem to have been made after the lease was signed, but before the lessee had entered into possession. The contention of the plaintiff was that the premises should have been returned in the condition they were in at the signing of the lease, the defendant contending that they were to be returned in the condition in which they were received by the lessee. The lease was silent as to the date of the month, the only evidence as to the time of its execution being the recital at the commencement of the lease that it was made on this ———— day of March in the year 1904. The court held that the omission of the date indicated that the minds of the contracting parties were not directed to the time of making the lease, because the words "now are" are inapplicable to any particular date in the month, and the covenant in the lease was "that the premises are now in good repair," when the evidence tended to show that in fact before the repairs were made—that is, at the time the lease was executed—they were in bad condition, and it was held that it was the understanding and contention of the original parties to the lease that the premises should be rendered at the end of the term in the same condition they were at the beginning thereof.

The case of Clark & Stevens v. Gerke et al., 104 Md. 504, 65 Atl. 326, grew out of a lease given by the appellees to the appellant. Among the stipulations of the lease was one for the making by the lessees of certain repairs and alterations in the premises, which were specifically provided for and definitely described. The specifications made no provisions for repair of the side walls of the building. In anticipation of their occupancy of the premises, the appellant sought from the proper authorities a permit as required by the ordinances of the city for doing the repairs or making the improvements required by the stipulations of the lease. Upon investigation the authorities pronounced the side walls unsafe and dangerous, and sent notice to the owners of the building that the walls were a menace to the safety of persons and property, and condemned the building, and the owners of the property were directed to have the same made safe and secure immediately. The lessors failed to comply with the orders so received, and the lessees did the work required of the lessors. The question arose as to who should pay the expenses incurred so as to meet the requirements of the ordinance. The court said:

"Covenants in a lease requiring the lessee to keep the premises in good order and surrender the peaceable and quiet possession of the same at the expiration of the term in as good condition as when received, natural wear, tear and decay excepted, and providing that whatever alterations or repairs the lessee should be permitted to make should be done at his own expense, and that previous to quitting the premises he would put them in the same condition in which he received them, do not impose a present obligation to put the property in an improved condition, but only to keep and surrender it in the condition in which the lessee received it, subject to the natural deterioration from wear, tear, and decay, and hence did not obligate the lessee to pay for the removal and rebuilding of a portion of the building leased made pursuant to the order of the inspector of buildings, which changes were necessary to be made before the lessee could enter into the enjoyment of the lease."

The defendant further contends that the improvements and changes made by him were made with the knowledge and consent of the plaintiff, and that therefore the plaintiff is estopped from claiming a compliance with the provision of the lease quoted. With this contention we cannot agree. It is true the plaintiff was aware of the changes, he discussed the same with defendant, and at the time informed the defendant the building belonged to him (the defendant) during the term of the lease, and all he required of the defendant was that the property be returned to him as provided by the lease.

There was no error committed by the court in refusing to give the instructions tendered by the defendant, for the reason that the instructions were based upon propositions which were not supported by competent evidence, but should we hold that the instructions offered and refused were proper, the substance of these instructions is covered by instruction No. 11, given by the court, in which the jury were instructed that, if they believed and found from the evidence in the case that after the execution of the lease contract, the plaintiff Mays agreed with the defendant Reinheimer that the defendant might make the changes and improvements on the building, and released him from his written contract to surrender the premises at the end of said lease in the same condition in which they were received, then and in that event the law would be for the defendant on the first count of the petition. This instruction was more favorable to the defendant than he was entitled to under the

evidence. On the question of damages, the court instructed the jury that if the defendant failed to return the premises in the condition named under the lease, the defendant would be liable for such sum as would be the reasonable and necessary cost for their restoration to the condition in which the same were delivered to the defendant. Under the facts in the case this instruction was a correct statement of the law.

In the case of Willoughby v. Atkinson Furnishing Co., Supreme Judicial Court of Maine, 93 Me. 185, 44 Atl. 612, the facts are almost identical with the facts in the instant case. There the lease contained the usual covenant on the part of the lessee to "deliver the premises at the end of the term in as good order and condition, reasonable use and wearing thereof or inevitable accident excepted, as the same are or may be put into by said lessor, and not make or suffer any waste thereof." It also contained the provision, "with the privilege of removing whatever partitions the lessee should desire to remove during their term of occupancy, provided the said lessee replaced said partitions in as good condition as they found them." The property leased was a brick building. It consisted of two stores upon the ground floor. For the purpose of using the building as one store, the lessee took down partitions and made numerous other alterations, but failed upon the termination of the lease to replace the partitions removed and to restore the building in other respects to the same condition in which it was at the time of the lease. In delivering the opinion, the court said:

"The defendant contends that the measure of damages is the injury, if any, to the market value of the property; that, if the alterations made by the lessee enhance the market value of the property, no damages would be recoverable upon this branch of the case. We do not think that this is the correct rule. The plaintiff was the owner of the building so arranged as to consist of two stores, offices, and halls. In his lease he allowed the defendant, at its own expense, to make such alterations as would convert the whole building into one store, but the lessee was required, by the provisions in the lease already referred to, at the expiration of the term to replace any partitions removed, and to deliver up the building in as good condition as when leased. The defendant cannot say, in answer to a claim for damages for nonperformance of its covenants, that the radical changes voluntarily made by it enhanced, or did not diminish, the value of the property. The owner was entitled to exercise his own judgment as to the interior arrangement of his own building. He allowed the alterations to be made, but he protected his rights by the clauses in the lease which re-

quired the lessee to restore the building in the same condition, so far as voluntary alterations are concerned, as when leased.

"The rule as to the measure of damages is a simple one. It is the cost of doing what the defendant covenanted to do but did not do—the cost of replacing the partitions and restoring the building to the same condition, so far as these voluntary alterations are concerned, as it was in when leased. In an English case, decided by the Court of Queen's Bench in 1891, it was decided that the measure of damages for a breach of a covenant to leave demised premises in repair is the amount of money necessary to put the premises into the state of repair required by the covenant. Joyner v. Weeks, 2 Q. B. 31."

If error was committed by the trial court, the same was in favor of the defendant, and he cannot be heard to complain.

The judgment of the court below is therefore affirmed.

All the Justices concur.