ANDREA POLO, Plaintiff, *v.* INTERNATIONAL TRUST COMPANY, Defendant.

Supreme Court, Trial Term, New York County, December 31, 1937.

*Alvin C. Cass,* for the plaintiff.

*Wise, Shepard & Houghton [John W. Kelly* and *Frank Podesta* of counsel], for the defendant.

NOONAN, J. The action, tried by stipulation before the court, is brought to recover damages for breach of a covenant for restoration in a written lease dated October 20, 1925, between the plaintiff as landlord and one Palumbo as tenant covering the premises 182 Graham avenue, borough of Brooklyn, New York city. The specific premises demised were stated in the lease to be " the store and rear part of basement up to space occupied by other tenants

* * * together with the one-story brick extension on the Meserole Street side of the said premises." The lease provided for a five-year term commencing November 1, 1925, and ending September 30, 1930, at a yearly rental of $1,800, payable in equal monthly payments of $150 in advance. In consequence of several mesne assignments the defendant became the assignee of the tenant and occupied the premises from September, 1929, to November 20, 1930. At the time the lease was made the premises were an empty furniture store. The lease stated that the premises were to be used only " as and for banking offices." Paragraph third of the lease prohibited the tenant under the penalty of forfeiture and damages from assigning the lease without the written consent of the landlord. This restriction was partly removed by paragraph thirty-fifth, which gave the tenant the right to assign the lease " only to duly authorized bankers or banking corporation."

Paragraph thirty-seventh of the lease stated that the lease was to be void and of no effect in the event that the tenant, on or before April 1, 1926, was unable to obtain permission from the proper banking authorities to use the premises for banking purposes. These provisions show a clear intention that the premises were to be used for a banking business and for no other purpose.

The tenant Palumbo, at the time the lease was made, was engaged in the real estate, insurance and steamship ticket business, and in addition conducted a small banking business in a store not far from the rented premises. When he moved into the building at 182 Graham avenue, he installed movable banking fixtures, but made no structural alterations. In the last part of September or in the early part of October, 1926, Palumbo assigned his lease to the Atlantic State Bank, a corporation engaged in the banking business. Subsequent to its entry into the premises this assignee, in addition to installing more appropriate banking fixtures, made substantial alterations to the structure of the premises demised. It tore down the brick walls on the exterior of the premises and substituted cement walls in place thereof; it installed a tile floor for a considerable area in place of a wooden one; toilets and wooden partitions were built; the entrance doors were changed; and smaller windows were inserted in place of the larger ones in use. In 1928 the City Trust Company became the assignee of the lease, and on February 11, 1929, its doors closed because of financial involvement. The Superintendent of Banks then took charge of·the premises and paid the rent called for by the lease.

In August, 1929, the lease was transferred by the Superintendent of Banks to the International Germanic Trust Company which, in September, 1929, commenced the payment of the rent as provided

in the lease. The name of the International Germanic Trust Company was subsequently changed to International Trust Company, the defendant here. The defendant paid rent up to October 1, 1930, and moved out on November 20, 1930. During its term of occupancy, the defendant used the premises for a banking business in the same condition as when the lease was transferred to it, and, with the exception of the installation of some necessary inside trade fixtures easily removable, made no alterations, structural or otherwise.

There are two provisions of the lease pertinent to this controversy. One is paragraph third, which prohibits the tenant, under the penalty of forfeiture and damages, from making any alterations in the demised premises without the written consent of the landlord, and the other is paragraph seventh, which is repeated in similar language in paragraph twenty-seventh and provides: " And at the expiration of the said term, the tenant will quit and surrender the premises hereby demised in as good state and condition as reasonable use and wear thereof will permit, damages by the elements excepted."

In this action the plaintiff sues for the reasonable cost of restoring the premises to their condition at the time of their rental to Palumbo which, at the lowest estimate, is $3,620.

It is asserted that the Atlantic State Bank, the assignee of Palumbo, made the structural alterations without the plaintiff's consent, and that under the provisions of paragraph seventh, repeated in paragraph twenty-seventh of the lease, the defendant as the final assignee of the original tenant is obligated to pay the cost of the restoration.

The first question to be decided is whether the plaintiff gave consent to the structural alterations made by the Atlantic State Bank in September or October, 1926. Plaintiff testified that he had agreed to the installation of the inside banking fixtures but as to the outside alterations he had not consented. Yet the proof shows most clearly his knowledge of these alterations and his failure, either by remonstrance or by legal action, to prevent them. Paragraphs third and twenty-fifth of the lease gave him the right to terminate the lease for the violation of any covenant, on a written notice of thirty days to the tenant.

Accepting as his reason for his inaction the promise of Ferrari, the president of the Atlantic State Bank, to restore the premises, at the end of its occupancy, to their original condition, the fact remains that upon the assignment of the tenancy to the City Trust Company no remedy was sought by him against the assignor. Surely he cannot contend that such a promise was binding upon any assignee of the Atlantic Trust Company. In accordance with the express

provisions of the lease, the premises were to be used exclusively for banking purposes. It was in the operation of such a business that the Atlantic State Bank made the structural alterations complained of. All of these facts tend to show an implied consent to the alterations made.

Assuming that there was no consent, the plaintiff's position is not in the least strengthened.

It cannot be disputed that the defendant made none of the structural alterations. It took the demised premises as they were when the Atlantic State Bank turned them over to its assignee, the City Trust Company. Nor is there any proof that the defendant had any knowledge that the alterations had been made in violation of the covenant in the lease. The breach of the covenant, if any, had been committed by the Atlantic State Bank. As an assignee, the defendant could not be held liable for this breach by its predecessor in possession. (*Townsend* v. *Scholey*, 42 N. Y. 18; *Mann* v. *Munch Brewery*, 225 id. 189, 195; *Trustees of Columbia University* v. *Rathbone*, 172 App. Div. 902; affd., 227 N. Y. 560; *Dananberg* v. *Reinheimer*, 24 Misc. 712.) The covenant for restoration ran with the land and was binding upon successive assignees so long as they remained in possession. (*Lehmaier* v. *Jones*, 100 App. Div. 495; *Knutsen* v. *Cinque*, 113 id. 677; *Thurber* v. *Losee*, 192 id. 148.)

The contention is that this covenant compelled the defendant to made good the breach committed by its predecessor. The covenant is not so drawn as to require the performance of so onerous and costly a task. It does not say that any succeeding assignee should repair the damage done by a previous occupant. All that the defendant was obligated to do was to surrender the premises demised in as good state and condition as when it received them, taking into consideration reasonable use and wear excepting damages by the elements. There was no duty imposed to restore the premises to their original condition or to completely change the character of the premises at the expiration of the term. By leaving the premises in good repair and condition, the defendant fully complied with its obligations under the lease. (*McGregor* v. *Board of Education*, 107 N. Y. 511.)

In August, 1931, the plaintiff sued the defendant in a Municipal Court to recover the value of the use of the premises from November 17, 1930, to March 17, 1931, and on the trial amended his complaint to include damages sustained as the result of the defendant's occupany beyond the term of the lease. As early as April, 1931, when the plaintiff retook possession, he knew the condition of the premises upon the defendant's removal therefrom.

In the Municipal Court action he failed to sue for the damages claimed in the present action.

It is well settled that an action based upon the breach of a contract such as a lease must include all breaches existing at the commencement of the action of which the plaintiff knew or should have known. (*Goldberg* v. *Eastern Brewing Co.*, 136 App. Div. 692; *Pakas* v. *Hollingshead*, 184 N. Y. 211.) The Municipal Court action was, therefore, properly pleaded in bar of the present action, and is an added reason against the plaintiff's recovery.

Even though the plaintiff cannot recover for the cost of restoration, there remains for consideration the question whether he is entitled to the damages caused by the removal of the few trade fixtures installed by the defendant.

Defendant's proof is that no damage resulted from their removal and that the premises were left in excellent condition. Plaintiff admitted that when the defendant moved the condition of the premises was fair. Plaintiff's proof in relation to this damage is not itemized and is most indefinite.

Whether the alleged damage was done by the defendant or by some previous assignee is not established by any convincing evidence. The preponderance of the proof is, therefore, against this claim. Judgment must be awarded to the defendant dismissing the action on the merits. Twenty days' stay and sixty days to make a case.