380 P.2d 190

**Easter CRUZAN and Claude M. Allison, Plaintiffs-Appellants,**

**v.**

**FRANKLIN STORES CORPORATION, a corporation, Karl's Shoe Stores, Ltd., a corporation, and Pauline U. Petchesky, Individually and as Executrix of the Estate of Barney W. Petchesky, Eugene U. Petchesky and Marian P. Silver, Defendants-Appellees.**

**No. 7032.**

Supreme Court of New Mexico.

March 26, 1963.

Hervey, Dow & Hinkle, W. E. Bondurant, Jr., S. B. Christy IV, Harold L. Hensley, Jr., Roswell, for appellants.

Seth, Montgomery, Federici & Andrews, Santa Fe, for appellees Pauline U. Petchesky, executrix of the estate of Barney W. Petchesky, Eugene Petchesky and Marian Silver.

Atwood & Malone, Roswell, for appellee Karl's Shoe Stores, Ltd.

NOBLE, Justice.

Plaintiffs, Easter Cruzan and Claude M. Allison, appeal from a judgment of the district court denying damages for an alleged breach of covenants in a ten-year building lease for failure to (1) make repairs, and (2) return the premises in as good order and condition as when entered upon, ordinary wear excepted.

Plaintiff Cruzan leased a two-story building in down town Roswell, New Mexico to Franklin Stores Corporation (hereafter called Franklin) for a term of ten years from January 1, 1947. Before entering into possession, Franklin subleased to Petchesky who assumed all of the terms and condi-

tions to be performed by the tenant. On December 1, 1948, Petchesky subleased the lower floor to Karl's Shoe Stores, Ltd., (hereafter called Karl's) who assumed and agreed to perform lessee's conditions as to the first floor. The trial court found that the first floor was returned in as good condition as when entered upon. The second floor was never occupied.

The principal issue is raised by two points dealing with facts and conclusions found or refused by the trial court. The attack is directed to whether, as a matter of law, the court applied the correct measure of damages for breach of covenants to repair and surrender the leased premises in good condition. Without discussing the findings or conclusions in detail, we think it may fairly be said that the specific question is whether a tenant may set off improvements made by it to escape its obligation to restore the building.

██ Generally, the measure of damages for breach of a covenant to repair or surrender in a prescribed condition is the cost of putting the premises in repair or the prescribed condition. Snider v. Town of Silver City, 56 N.M. 603, 247 P.2d 178; 80 A.L.R.2d 983, 987, 1001; Reinheimer v. Mays, 75 Okl. 131, 182 P. 230; Braem v. Washington Piece Dye Works, 100 N.J.L. 209, 126 A. 461 (S.Ct.1924); Delano v. Tennent, 138 Wash. 39, 244 P. 273, 45 A.L.R. 766; Storr v. Keljik, 178 Minn. 391,

227 N.W. 211. But, defendants argue that where improvements have been made which enhance the value of the premises, · the lessee's liability for failure to surrender in the prescribed condition is limited to diminution in market value of the property. The trial court applied the diminution test as the measure of damages in this case.

In support of diminution in value of the premises as a whole, as the measure of damages, defendants rely largely upon Realty Associates, Inc. v. United States, 138 F.Supp. 875, 134 Ct.Cl. 167 and United States v. Flood Building, 157 F.Supp. 438 (D.C.Cal.1957). Both decisions are distinguishable upon their facts. The court characterized the improvements and the added value in Realty Associates as a "rags to riches" story. There, very extensive improvements were made by the government which greatly increased the value, and the property was returned in such improved condition that it leased for a very substantial amount where before it had been vacant and largely in an untenantable condition. That decision turned upon the fact that no damage had been caused to any part of the building by any act or neglect of the tenant. The court remarked that tearing out the improvements made by the tenant and restoring the property to its former condition would be the last thing the landlord would want. He was held not entitled to recover the cost of tearing out improvements which he did not want removed, and which would

have left the premises in much less valuable condition. The alterations in the Flood Building case gave the structure, in down town San Francisco, a higher general use for rental purposes than before the improvements. The court there distinguished that case from the general rule when it said:

"* * * But the important feature of this case is that the government alterations did not impair the utility of these premises as an office building."

■ Improvements made by a tenant may not be set off against damages caused by the breach of covenants to repair and to surrender in good condition. Willoughby v. Atkinson Furnishing Co., 93 Me. 185, 44 A. 612; Reinheimer v. Mays, supra; Atlantic Coastline Railroad Co. v. United States, 129 Ct.Cl. 137 (1954). Particularly is this true where title to improvements made by the tenant become the landlord's property by virtue of the terms of the lease. The trial court found:

"7. The defendant Petchesky installed a new store front in said building and made other improvements to the lower floor and some improvements to the second floor of the building. Under the express terms of paragraph 3 of said lease, title to said improvements automatically vested in Plaintiffs upon termination of said lease or upon failure of Defendants to remove said improvements within a reasonable time after termination of said lease and Defendants did not do so."

The court likewise found that the lease in this case further provided:

"2. * * * and the Second Party [lessee] covenants that during the term of this lease it will make all of the ordinary and usual repairs on the demised building, at its sole cost and expense, and that at the termination of this lease it will yield up the said premises to the First Parties in as good order and condition as when the same were entered upon by the Second Party, loss by inevitable fire, casualty, accident or ordinary wear excepted; * * *."

■ Under the terms of this lease, lessors were entitled to the return of the premises in as good order and condition as when the lease began, and, in addition, to any new store front, windows or partitions installed by the tenant and to any other removable improvements not removed within a reasonable time after termination of the lease. A tenant may not use the value of improvements which he has expressly agreed belong to the landlord as an offset against his liability for breach of his covenant to repair and surrender in good condition. We can only give effect to the agreement made by the parties as expressed by their written instrument. It

is not contended that the language is ambiguous or that the words employed should be construed to mean anything other than their plain, ordinary and usual meaning. Defendants may not offset plaintiffs' own property against defendants' obligation. It is contended that the second story of the leased premises was found by the court to have been in good condition at the beginning of the lease and that the evidence is undisputed that the second story was not in rentable condition upon termination of the lease. A covenant to yield up the premises in good order and condition means that the property must be returned in rentable condition, Ginsburg v. Jacobson, 276 Mass. 108, 176 N.E. 918, unless it has become unrentable solely by reason of ordinary wear and without fault or negligence of the lessee. Powell v. John E. Hughes Orphanage, 148 Va. 331, 138 S.E. 637. See Codman v. Hygrade Food Products Corp., 295 Mass. 195, 3 N.E.2d 759, 106 A.L.R. 1354.

■ Furthermore, it is a general rule that set off will not be allowed unless defendant has the right to assert the set off against the plaintiff in an independent action therefor. Haefner v. First Nat. Bank of Elmwood Place, 67 Ohio App. 213, 36 N.E.2d 308; American Smelting & Refining Co. v. Swisshelm Gold Silver Co., 63 Ariz. 204, 160 P.2d 757; Scoville v. Vail Inv. Co., 55 Ariz. 486, 103 P.2d 662; Sarkeys v. Marlow, 205 Okl. 15, 235 P.2d 676; 80 C.J.S. Set-Off and Counterclaim § 25, p. 34.

Crystal Concrete Corp. v. Town of Braintree, 309 Mass. 463, 35 N.E.2d 672, is likewise distinguishable upon its facts. Lessee may not include the value of improvements agreed to belong to lessor, in any event, in determining fair market value. If the value of such improvements is eliminated from fair market value, the diminution in value would very likely approximately equal the cost of the repairs. We cannot rewrite the contract for the parties. We conclude that the trial court applied the wrong measure of damages.

■ Defendants urge that since plaintiffs elected to remove the second story of the building and not to make repairs nor incur any expense therefor, the plaintiffs have not sustained an actual damage and the tenant should not be liable for the expense of repairs. Reliance is placed upon Lifter v. Earle Co., 270 Pa. 496, 113 A. 665, in support of this contention. In that case, lessee had agreed that he would remove changes made by him and restore the building to its original condition, except as to such changes as lessor might determine should remain for his benefit. The lessor, upon termination of the lease, determined not to have the building restored to its former condition at all, but elected to make an entirely different construction. In the instant case, the lessor seriously contends that his election to remove the second story was made only after termination of the

lease and because of the lessee's failure to surrender the premises in the prescribed condition. Lifter v. Earle Co. is clearly distinguishable. No question of restoration or damage occasioned by the tenant's neglect to make ordinary repairs was present in that case. We do not consider either Bokum v. Elkins, 67 N.M. 324, 355 P.2d 137 nor Frank Bond & Son, Inc. v. Reserve Minerals Corp., 65 N.M. 257, 335 P.2d 858 persuasive under the facts of the instant case.

Perhaps because of the measure of damages applied, the trial court made no finding of specific damages by reason of failure to surrender in the prescribed condition. In Appleton v. Marx, 191 N.Y. 81, 83 N.E. 563, 16 L.R.A.,N.S., 210, diminution in the value of the lessor's estate by reason of non-repair and failure to surrender in the prescribed condition was rejected as the proper measure of damages, even though the repairs were made by a subsequent tenant at his own expense. See, also, Scott v. Haverstraw Clay & Brick Co., 135 N.Y. 141, 31 N.E. 1102. Plaintiffs contend that their election to remove the second story resulted from omission to do that which defendants had agreed to do. Under the express terms of the lease, in this case, the lessee covenanted that the premises should revert to the owner undeteriorated by any wilful or negligent act of the tenant. If the plaintiffs elected to remove the second story of the building regardless of the condition in which it was surrendered, a different question might be presented. No finding on this was made by the trial court.

■ We find no merit in the contention that recovery should be denied merely because plaintiff Allison acted in a fiduciary relationship with defendant Petchesky when the lease was executed. There is no finding that plaintiff breached any fiduciary obligation.

■■ Finally, defendants urge that the plaintiff Allison should be denied recovery because he had knowledge of the condition of the building when he bought a one-half interest in 1955. The covenant of the lease, with which we are concerned, is one to make the ordinary and usual repairs and to surrender the building in good condition, less ordinary wear. Feuerberg v. Polsky, 180 N.Y.S. 103 (S.Ct.1920) held that a covenant to keep in repair and to surrender the premises in good order and condition obligates the lessee to repair the premises prior to or at the time of termination of the lease. A covenant to surrender the leased premises in as good order and condition as when entered upon relates to the end of the term of the lease and cannot be asserted before expiration of the term. Judkins v. Charette, 255 Mass. 76, 151 N.E. 81, 45 A.L.R. 1; Hill v. Hayes, 199 Mass. 411, 85 N.E. 434, 18 L.R.A.,N.S., 375; Herboth v. American Radiator Co., 145 Mo. App. 484, 123 S.W. 533. It is clear that

the plaintiffs had no right to assert a claim under lessee's covenant to surrender the premises in good condition until termination of the lease. The purchaser was entitled to rely upon lessee's covenant to redeliver the premises in the specified condition. Even though Allison bought the remaining Cruzan interest in the premises after termination of the lease, plaintiff Cruzan retained her right of action for lessee's claimed breach of the covenant. Neither plaintiff should, for the reason claimed, be denied recovery for a breach, if any, of the covenant.

The finding that Karl's did not assume any obligation as to the second story of the building; committed no waste; and that its use and occupancy of the first story resulted only in ordinary wear is not attacked. The judgment will, therefore, be affirmed as to Karl's Shoe Stores, Ltd. and will be reversed as to the other defendants.

It is apparent that because of the retirement of the judge before whom the cause was tried, a new trial must be had before another judge. That being true, the case must be remanded with instructions to vacate the decision of the trial court and the judgment flowing therefrom as to all defendants, except Karl's Shoe Stores, Ltd. A new trial must be granted the remaining parties; and the court, in rendering its decision, is not to consider the evidence introduced at the first trial, unless the same

be offered and received in evidence pursuant to our rules relating to testimony received in a prior hearing.

It is so ordered.

CARMODY and CHAVEZ, JJ., concur.