In re Ray F. **CHAVEZ** and Stella A. Chavez, d/b/a Kettle Restaurants, Debtors.

**HLH ENTERPRISES, INC.,** Plaintiff,

v.

**Ray F. CHAVEZ,** Defendant.

Bankruptcy No. 81–01343 M A.
Adv. No. 81–0808.

United States Bankruptcy Court,
D. New Mexico.

March 18, 1982.

---

Paul M. Fish, Albuquerque, N.M., for plaintiff.

Jennie Deden Behles, Albuquerque, N.M., for defendant.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came on for hearing January 21, 1982, and was continued February 25, 1982, on plaintiff's Complaint to Lift Automatic Stay and plaintiff's Motion for Judgment on the Pleadings; plaintiff was represented by its counsel, Paul M. Fish, and defendant was present in person and through his counsel, Jennie Deden Behles. The Court previously ordered that the automatic stay remain in effect with certain modifications pending the resolution of the issues addressed herein.

Plaintiff is a Texas corporation which operates Kettle Restaurants across the country and confers the privilege of operating the same on others through franchise agreements. Defendant is a franchisee of plaintiff, operating two Kettle Restaurants in Albuquerque. The contractual relationship between plaintiff and defendant was established by two sets of three documents each—a lease of real property, a lease of personal property, and a franchise agreement.

On November 25, 1981, plaintiff sent a notice of default to defendant. Defendant filed a petition in bankruptcy under Chapter 11 of Title 11 of the United States Code on December 21, 1981.

Plaintiff contends that the documents labelled "leases" are undoubtedly leases. Pursuant to the alleged leases, the mailing of the notice of default caused to begin a 30-day period of time, the expiration of which resulted in termination of the alleged leases unless the defendant cured the defaults set out in said letter. No action was taken with respect to the alleged defaults and plaintiff alleges that the leases terminated on or about December 25, 1981. Plaintiff asks this Court to lift the automatic stay so as to allow it to regain possession of the premises of said Kettle Restaurants. In the event that this Court finds the leases not terminated, plaintiff seeks lifting of the stay to allow it to terminate said leases due to defendant's substandard operation of the restaurants.

Defendant, however, argues that the documents involved herein are not leases, but documents granting plaintiff a security interest in the premises and equipment of defendant's restaurants. Such a classification is based on paragraph 23 of said franchise agreements, which allows the franchisee to convey his interest in the Kettle Restaurants to a third party so long as plaintiff is given the first right of refusal with respect to such a conveyance. Being characterized as a security interest of sorts, there was said to be no termination of interest of the defendant as a result of the notice of default sent to defendant November 25, 1981.

At the conclusion of the February 25, 1982, hearing, the Court reserved for judgment the following questions:

(1) Are the documents at issue herein in the nature of leases or in the nature of security instruments?

(2) Were these agreements terminated 30 days after the notice of default was sent to defendant?

The Court ruled from the bench February 25, 1982, that the franchise agreement and leases as to each store must be read as a whole rather than as separate documents. Therefore, resolution of the remaining issues will proceed on the basis that the documents with respect to each restaurant be read together. The remaining issues relate to construction of the documents. Consequently, this Court will rely on non-bankruptcy law for guidance in its analysis.

Paragraph 33 of each of the franchise agreements states that the document shall be governed in accordance with the laws of the State of Texas and this Court will do so. In final analysis, law of Texas and New Mexico on the remaining issues provides the Court with the same result, so that even if Texas law does not in fact govern resolution of these issues, the result is nevertheless the same under New Mexico law.

*Lease or Security Instrument*

The portion of the franchise agreement which allegedly creates a question as to whether the documents are leases or security instruments is paragraph 23(a) of each lease which reads, in pertinent part, as follows:

> 23. *Restrictions of Change of Ownership* (a) Franchisee shall not discontinue the operation of the Licensed Premises, or sell, transfer, assign, lease, sublet, convey or encumber any interest in the Licensed Premises or any part thereof, or in this Agreement without in each instance first offering to H.L.H. the exclusive right to purchase the same.

Plaintiff's complaint, exhibits E and F.

The primary role of construction of an instrument is to ascertain and give effect to the intent of the parties by the language used in the agreement. If the instrument is worded so that it has a certain meaning or interpretation, it is not ambiguous and is not susceptible to modification through the introduction of parol evidence. However, if the instrument is susceptible to more than one meaning, it is said to be ambiguous and

may be interpreted through the use of parol evidence. *Howell v. Union Producing Co.*, 392 F.2d 95 (5th Cir. 1968); *St. Paul Mercury Insurance Co. v. Price*, 329 F.2d 687 (5th Cir. 1964); *Wall v. Lower Colorado River Authority*, 536 S.W.2d 688 (Tex.Civ.App. 1976); *Grayson County State Bank v. Osborne*, 531 S.W.2d 846 (Tex.Civ.App.1975). The same rules apply in New Mexico. *See Schaefer v. Hinkle*, 93 N.M. 129, 597 P.2d 314 (1979); *Brown v. American Bank of Commerce*, 79 N.M. 222, 441 P.2d 751 (1968); *Armijo v. Foundation Reserve Ins. Co.*, 75 N.M. 592, 408 P.2d 750 (1965).

The language of paragraph 23(a) of the franchise agreement is quite clear and unambiguous. From the language of the franchise agreement, it appears to the Court that the interest which the defendant may convey is only his interest in the "licensed premises," whatever that might be. The "licensed premises" are defined according to the lease agreements. Therefore, the Court directs its attention to the lease agreements to determine just what the defendant has the power to convey.

As with other written instruments, the ends sought in the construction of leases is the ascertainment of the intent of the parties as revealed by the language used in the lease; parol evidence to be admitted only to explain ambiguities on the face of the writing. *Ferrari v. Bauerle*, 519 S.W.2d 144 (Tex.Civ.App.1975); *Armstrong v. Skelly Oil Co.*, 81 S.W.2d 735 (Tex.Civ.App.1935). *See also Gallup Gamerco Coal Co. v. Irwin*, 85 N.M. 673, 515 P.2d 1277 (1973); *Springer Corp. v. American Leasing Co.*, 80 N.M. 609, 459 P.2d 135 (1969).

Again, the language in the lease agreements which might be said to give defendant more than a leasehold appears in paragraph XVI. Said paragraph gives the lessee an opportunity to renew the lease for another term. The clear meaning of said paragraph is to merely give the lessee an option to renew the original leasehold; no ownership interest passes to the lessee upon exercising the option and the lessee continues to be liable for rental payments during the extended period of occupancy.

Therefore, construing the documents together, the rights which defendant could convey are necessarily only what he holds himself and nothing more. Since defendant owns a leasehold interest in the "licensed premises," he may convey only a leasehold interest. This is no more or less true if the offer is made to plaintiff or some third party.

Even if the writings are ambiguous, the only extrinsic evidence relating to parties' intent was testimony of the debtor, Ray F. Chavez, who stated that he understood that the only interest he could offer to another pursuant to the franchise agreement would be that of a lessee, nothing more.

Therefore, based on the above, this Court finds that the defendant has only a leasehold interest in the premises.

*Termination of Lease*

Whether the leases were terminated 30 days after defendant received plaintiff's notice of default relates to paragraphs of the lease agreements which address rights of repossession by the lessor. The following represents what appears in each lease:

### XIV.

### RIGHT OF REPOSSESSION

In the event of default in any of the covenants stated herein, the lessor may enforce the performance of this lease in any manner provided by law or equity, and this lease MAY be forfeited at lessor's discretion if such default continues for a period of thirty (30) days after the lessor notifies the lessee in writing of such default and of the lessor's intentions to declare the lease forfeited. Whereupon, this lease may be terminated and the lessor or his agent shall have the right without further notice of demand to re-enter... (Emphasis added.)

Plaintiff's complaint, exhibit A.

Defendant's argument hinges on the fact that the lease "may be forfeited" by the mailing of a notice of default and that in order to actually forfeit, the lessor need take some affirmative action beyond sending notice of default. Of course, plaintiff believes that mailing notice of default is sufficient to terminate the lease if lessee fails to cure the stated defaults. Additionally, the default letter sent to defendant "intends to declare the leases forfeited, if such defaults continue for a period of thirty days..." and, further states that:

You have thirty days from receipt of this notice within which to pay in full the above amounts, and cure the foregoing defaults of both Franchise Agreements. If you do not fully pay and cure said defaults within the thirty-day period, H.L.H. shall without further notice terminate the Franchise Agreements and will thereafter pursue all further remedies available to H.L.H. Enterprises, Inc., under law and as provided by the terms of said Franchise Agreements. And if you do fully cure the foregoing defaults within the thirty-day period, H.L.H. Enterprises, Inc., retains its right under Paragraph 25 of said Agreements to either reinstate or terminate those Agreements.

Plaintiff's complaint, exhibit G.

The Court finds such language ambiguous at best. Doubt as to the meaning of the language of a lease is to be resolved against the lessor. *Parham v. Glass Club Lake, Inc.*, 533 S.W.2d 96 (Tex.Civ.App. 1976); *Ferrari, supra; Red Oak Fishing Club v. Harcrow*, 460 S.W.2d 151 (Tex.Civ. App.1970); *Golden Spread Oil, Inc. v. American Petrofina Co. of Texas*, 431 S.W.2d 50 (Tex.Civ.App.1968); *Sirtex Oil Industries, Inc. v. Erigan*, 403 S.W.2d 784 (Tex.1966). *See also Lommori v. Milner Hotels*, 63 N.M. 342, 319 P.2d 949 (1957); *Crecente v. Vernier*, 53 N.M. 188, 204 P.2d 785 (1949). So too should an ambiguity in a default letter be construed against the lessor.

In construing the lease and default letter, the Court has no choice but to find that the lease was not terminated by plaintiff's notice of default, but that the lease and default letter both contemplated some further affirmative action which was stayed by the filing of the petition herein.

Having found that the defendant has a leasehold interest, it is this Court's opinion that reasonable adequate protection for plaintiff is for the defendant to continue making its lease and franchise payments by certified funds on the date said payments are due under the lease and franchise agreements until further order of the Court. Therefore, the automatic stay shall remain in full force and effect conditioned upon defendant's making said required lease and franchise payments. In the event that defendant fails to make said payments and upon plaintiff's filing an affidavit to that effect, the automatic stay shall be lifted with respect to the plaintiff without further order from this Court.

An appropriate order will enter.